UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

ANTHONY LEDELL JONES,

          Defendant.

_____/

Criminal Case No. 17-20697

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING ANTHONY LEDELL JONES'S MOTION FOR COMPASSIONATE RELEASE [45] AND DENYING AS MOOT JONES'S MOTION TO VACATE [40]**

On July 9, 2018, defendant-petitioner, Anthony Ledell Jones, pled guilty to possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). (ECF No. 35). The Court sentenced Jones to seventy months in prison on November 20, 2018. (ECF No. 39, PageID.130). On June 8, 2020, Jones moved to vacate his sentence under 28 U.S.C. § 2255, pursuant to the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (ECF No. 40). On June 25, 2020, the Court appointed the Federal Community Defender to represent Jones on his Motion [40]. (ECF No. 42). On August 24, 2020, Jones moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 45). The Court held a hearing on the Motion [45] on September 15, 2020.

For the reasons stated on the record and below, Jones's Motion [45] is **GRANTED**, and his sentence is reduced to time served.

## BACKGROUND

Jones was born in Detroit, Michigan in 1970. (PSR ¶¶ 44-45). He was primarily raised by his mother, who died of cancer when he was about seventeen. (PSR ¶ 44). Jones has two full-siblings and two half-siblings. (PSR ¶ 44). He is close with his half-sister, Renee, who lives in Alabama. (*Id.*). Jones also has a thirty-two-year-old daughter from a prior relationship. (PSR ¶ 47).

Jones, who dropped out of school in ninth grade, has struggled with reading for all of his adult life. (PSR ¶ 56). He received special education as a child but nevertheless currently performs at the level of a kindergartener attempting fourth- or fifth-grade level work. (Id.; ECF No. 45, PageID.163; ECF No. 45-9, PageID.249).

Jones has also wrestled with substance abuse for many years and his criminal record dates back to the 1990s. (PSR ¶¶ 30-37, 54). Most of Jones's convictions involve drugs or are fairly old, such as his 1998 flight from a traffic stop. (PSR ¶¶ 30-36). Apart from the instant offense, Jones's record reflects only one conviction in the last ten years—an assault—for which he served ten months in jail. (PSR ¶ 37).

Jones was arrested for his current offense on May 30, 2017, after two Detroit police officers observed him with a handgun stored in his waistband. (PSR ¶ 12). After being stopped, he admitted to possessing the handgun without a concealed

weapon permit. (*Id.*). During a subsequent interview with ATF officers, Jones stated he had purchased the handgun that day from an unknown individual for protection. (PSR ¶ 13). Through a serial number search a few days later, ATF agents determined that the handgun had been stolen. (PSR ¶ 14).

Jones is currently forty-nine years-old, incarcerated at Schuylkill FCI, and scheduled for release on May 19, 2022. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 55676-039) (last visited October 9, 2020).

## ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the compassionate release statue, provides, in relevant part:

**(A)** [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    **(i)** extraordinary and compelling reasons warrant such a reduction.

[. . .]

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).

A. Exhaustion

Before a petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1), they must either exhaust their administrative remedies with the BOP or wait thirty days from when they filed a request with their warden. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). On July 24, 2020, counsel for Jones wrote to the Warden of Schuylkill FCI on Jones's behalf, requesting home confinement pursuant the CARES Act, or, in the alternative, compassionate release pursuant to 18 U.S.C. § 3582(c). (ECF No. 45-3, PageID.171). The Government concedes that Jones has exhausted his administrative remedies. (ECF No. 51, PageID.417).

"The Court now has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether [Jones] poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors." *Crider v. United States*, No. 01-81028-1, 2020 U.S. Dist. LEXIS 133233, at *4 (E.D. Mich. July 28, 2020).

B. Extraordinary and Compelling Reasons for Release

In order to ascertain whether there are extraordinary and compelling reasons to release Jones, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Application Notes to the relevant policy statement provide the following:

**1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    **(A) Medical Condition of the Defendant.**—

        **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        **(ii)** The defendant is—

            **(I)** suffering from a serious physical or medical condition,

            **(II)** suffering from a serious functional or cognitive impairment, or

            **(III)** experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

[. . .]

    **(D) Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13. Here, Jones has presented "Other Reasons" in combination with "Medical Condition[s]" to warrant compassionate release.

Jones suffers from obesity, hypertension, prediabetes, and issues stemming from the partial amputation of his right leg. (ECF No. 47, PageID.253, PSR ¶ 80). Jones argues, and the Government concedes, that in light of these medical conditions, the risk posed by COVID-19, which is especially acute in the prison

context, constitutes extraordinary and compelling reasons for release. (ECF No. 45, PageID.148; ECF No. 51, PageID.419). *See generally FAQs for Correctional and Detention Facilities*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html [https://perma.cc/NX3D-SRZL] (last updated June 17, 2020) (explaining that "[p]eople in correctional and detention facilities are at greater risk for some illnesses, such as COVID-19"). The Court agrees.

<u>Dangerousness</u>

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although the Government concedes that "Jones has satisfied the first eligibility threshold for compassionate release," it argues, citing Jones's criminal record, that he is ineligible because he remains a danger to the community. (ECF No. 51, PageID.419).

While the Government is correct that Jones's record reflects several criminal convictions prior to the instant case, only one of these incidents occurred during the last decade. (PSR ¶ 37). The bulk of Jones's criminal activity, including parole violations, took place in the 1990s and early 2000s, when Jones was in his mid-twenties and early thirties, and before he had lost his right leg. Today, Jones is a few months shy of fifty and has been slowed down considerably by his medical

conditions and disability. Against this backdrop, the 2015 incident, which involved Jones hitting someone with his cane after an argument escalated, appears not only isolated but also a poor indicator of Jones's dangerousness. *See generally* U.S. SENT'G COMMISSION, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf [https://perma.cc/M39D-YQAN] (describing substantially lower recidivism rates for offenders over fifty). Jones's three minor disciplinary infractions over a period of thirty-eight months are similarly unconcerning. (ECF No. 45-8, PageID.248).

Weighing against a finding dangerousness, on the other hand, are Jones's repeated attempts to avail himself of BOP programs, such as the GED course and the Residential Drug Abuse Program. Though he has thus far been unsuccessful in completing these programs, the Court is impressed by the extent to which Jones has been trying to better himself, particularly in the face of severe learning disabilities. Upon release, Jones will reside at a Residential Reentry Center and receive mental health and substance abuse treatment. He will also be able to apply for disability payments due to his status as an amputee. (PSR ¶ 58). In other words, he will have both the resources to support himself and an external support system to help him adjust to life in the community. These factors, combined with Jones's hearing

testimony that he would make good choices upon release for his family's sake, persuade the Court that Jones will not pose a danger.

Section 3553(a) Factors

The last step a district court contemplating a motion for compassionate release must take is to consider the sentencing factors provided by 18 U.S.C. § 3553(a). Those are as follows:

> **(a)** **Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> **(B)** to afford adequate deterrence to criminal conduct;
>> **(C)** to protect the public from further crimes of the defendant; and
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence and the sentencing range established for—
>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> [. . .]
>
> **(5)** any pertinent policy statement—
>
> [. . .]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)

The Court's consideration of these factors is demonstrated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the September 15, 2020 hearing.

Jones's offense involved neither violence nor threat of violence and he confessed on the spot when stopped by police. (PSR ¶¶ 12-13). Accordingly, the thirty-eight-month sentence Jones has already served—his first time in federal custody—adequately reflects the seriousness of his offense and provides just punishment. Additionally, Jones's record in prison, while not spotless, is positive enough to persuade the Court that the years he has served have promoted his respect for the law.

Moreover, Jones was apprehended by police very soon after purchasing the stolen firearm at issue in this case. (PSR ¶ 12). His speedy capture within hours of the illegal purchase provides substantial deterrence to both Jones and others. *See generally* VALERIE WRIGHT, SENT'G PROJECT, EVALUATING CERTAINTY VS. SEVERITY OF PUNISHMENT (2010), https://www.sentencingproject.org/wp-content/uploads/2016/01/Deterrence-in-Criminal-Justice.pdf [https://perma.cc/WS6R-55EX] (explaining that "[r]esearch to date generally

indicates that increases in the *certainty* of punishment, as opposed to the *severity* of punishment, are more likely to produce deterrent benefits" (emphasis in original)).

Continued incarceration, meanwhile, will do little to rehabilitate Jones. Due to the ongoing pandemic, many BOP programs have been suspended. *See generally BOP Modified Operations*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp [https://perma.cc/CY7D-MR95] (last updated Oct. 8, 2020). Indeed, it is unclear what, if any, programs at Schuylkill FCI remain available to someone with Jones's physical and learning limitations. Release to a Residential Reentry Center, on the other hand, will enable Jones to obtain substance abuse treatment, find permanent housing, and transition to a more stable lifestyle than he was accustomed to in 2017. Accordingly, a sentence reduction to time served is consistent with the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Jones's Motion for Compassionate Release [45] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Jones's Motion to Vacate [40] is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that Jones be **IMMEDIATELY RELEASED** to begin his three-year term of **SUPERVISED RELEASE**, as

outlined by the November 20, 2018 Judgment (ECF No. 39, PageID.131), including

the following Special Conditions:

> **The defendant shall reside in a Residential Reentry Center for up to 270 days. The defendant must follow the rules and regulations of the Center, including social distancing and mask-wearing guidelines, and must pay subsistence costs associated with placement. Upon release, the defendant shall undergo a fourteen-day quarantine if deemed necessary by the Probation Department.**

> **The defendant shall participate in an inpatient or outpatient substance abuse treatment program and follow the rules and regulations of that program. The type of program and its duration shall be at the discretion of the Probation Department. This condition may be waived at the discretion of the Probation Department if the defendant is found, upon clinical assessment, to not require substance abuse treatment.**

> **The defendant shall participate in an anger management program selected by the Probation Department.**

> **As deemed necessary by the Probation Department, the defendant shall participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise the defendant's participation in that program (provider, location, modality, duration, intensity, etc.).**

> **SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow

Dated: October 15, 2020          Senior United States District Judge